This is our second case of the morning, Aver v. American Home Assurance. For the appellate, Mr. Gregory, for the appellate, Mr. Haxel, you may proceed. Good morning, your honors. My name is William Gregory, and I'm here on behalf of Alice Aver. And as you're aware, I'm sure from the various briefs as far as the history of this case, but just to get started, briefly, this is a case that results from a workers' compensation claim initially, in which there have actually been two separate Section 19b hearings in front of the Workers' Compensation Commission, where Ms. Aver was given two separate awards against her employer, Metal Transportation. However, Metal Transportation filed bankruptcy and has not paid, other than a small amount on the first award. They have not paid the additional balances that are due pursuant to those awards. During the pendency of the workers' compensation claim, after the first award was entered, Ms. Aver was notified that while Metal Transportation initially told her that they were self-insured and had assigned an in-house adjuster to the case, after the first award was entered and was actually, we were attempting to enforce it in the state of Utah, was informed that they were filing bankruptcy and that they, in fact, were insured, and that she should contact AIG in order to collect the payment of that award. She, in fact, did contact AIG, and after some negotiation and discussion, AIG denied payment of that claim. Were they made a party to the proceeding? Were they made a party to the work comp proceeding? No, they were not. We were not aware that AIG existed at the time that the workers' compensation claim was initially filed. We were told that Metal Transportation was self-insured, and so they were not made a party to the proceeding. However, once we determined that they were, we filed a motion to add them to the workers' compensation claim, and actually, that's part of this case, because that issue actually was before this Court on a previous occasion, because the arbitrator and the Commission denied our motion to add AIG as a party to the workers' compensation claim. That also proceeded through the Circuit Court and this Court, and the motion to add them was denied. However, there was some discussion in regards to the case of McAnally v. Buttsinger Builders, in which a previous work comp claimant had attempted to enforce a workers' compensation award against, I believe it was State Farm, and was denied, and the decision in that case had stated that they would not be able to collect it without filing a separate action. And on the prior appeal, there was no resolution as to what that language meant, but once the appeal was resolved and it was determined that AIG could not be named as a party to the workers' compensation claim at that point, because of the prior 19B trial that was held and the decision and award that was entered, we filed this separate action based on the language of McAnally, based on the language of the Workers' Compensation Act, and we actually alleged five separate counts against AIG, ultimately five separate counts in the Third Amendment complaint against AIG as our basis for requesting that AIG be required to pay the two 19B awards that were entered against Metal Transportation. Help us with what would happen in workers' compensation proceedings if Metal Transportation had said from the beginning that they were insured. Well, I think that, obviously, if Metal Transportation from the beginning had said that they were insured, we would have notified AIG and talked to AIG prior to even having a hearing. I mean, typically they would give us the phone number of an adjuster or a contact person at the insurance company. We would then contact them, provide them a copy. Is that something that you're obligated to ask, or does the employer just tell you that? Typically the employer will just volunteer that information, because if they have an insurance company, then they're not the one that's going to handle the claim. And so when you contact the employer and you say we have a workers' compensation claim, who do we need to talk to in order to determine whether or not... Who paid the benefits between August and November, or August and December? Metal Transportation paid those benefits directly. Why would they do that if they were insured? We really never got an explanation other than the fact that, I think at one point, there was a reference to the fact that they believed that maybe it was just a very minor claim, and that it would cost them less to just pay... Do employers sometimes do that? Yes. To avoid... To avoid their rates going up, or to avoid issues that could come with having to report an additional claim. And so they attempted to handle it themselves, and then once the award was entered, and then they started filing bankruptcy, and realized that the claim was bigger than what they thought it was... Well, I realize this is different than personal injury litigation. Yes. But what happens if you don't give state farm notice? Not in workers' compensation, but... You got in an accident, somebody gets hurt, it goes to trial, there's a judgment against you, and a couple years later you find out that the person that you can't collect from had insurance. How would you go about getting anything from state farm in those circumstances? I think that you would do basically the same thing that we did here. Well, then the insurance company is going to say, wait a minute, wait a minute, we would have controlled that litigation, we would have provided counsel, we would have had notice, we would have defended, we would have cross-examined, we would have done a whole series of things differently that maybe there would have still been some liability, maybe not. If there were liability, maybe the damages would have been considered. Right. It was the person over there that failed to tell us that a claim had been filed that did the bad deed. In this case, metal transportation for apparently making you think, or making a client think that they were self-insured. Correct. Well, and then obviously, I mean, if you sued state farm in that separate one, then they would come up with all of these defenses. Right. And if they proved that those defenses were valid based on whatever circumstances were present, then I would assume obviously those cases would be handled based on what defenses they asserted. I mean, if they're saying based on, for example, in this case, one of the counts is in regards to the workers' compensation policy of insurance. Count two of the complaint is based on the actual terms of the policy. And one of the defenses that AIG has raised is that based on the terms of the policy, that metal transportation did not comply with the terms of the policy as far as the notice provisions. And so therefore, we cannot proceed against them based on the terms of the policy because they did not comply with the notice provisions. One of our contentions is that actually in this case, that the actual insurance policy does not have language or terms that state that notice to them is a prerequisite to coverage. And so therefore, it's our position that based on the actual insurance policy in this case, that that's not a valid defense. Further, based on the statutory provisions contained in their own insurance policy, I mean, they state that we are directly and primarily liable to any person entitled to the benefits payable by this insurance. And those persons may enforce our duties. And it says enforcement may be against us or against you and us. And that's page two of seven on the subsection H of the insurance policy. And so it's our position that, first of all, you take those policy provisions, and those policy provisions don't provide, in our opinion, they don't provide a defense. I can't envision that this is the first time that something like this has ever happened in workman's compensation cases. Well, I can't either. But, I mean, as far as, like, actual case law. Well, I'm really thinking more about how the arbitrator and commission, how they handle this sort of thing. Right. Wait a minute. I don't. Well, and I think that, though, a lot of times, I mean, because I think maybe the difference in this case is the fact that the employer, number one, filed bankruptcy, you know. And so, I mean, because obviously, for example, if you're working for Caterpillar and they tell you, hey, we're self-insured, you proceed against them. And then later on they say, oh, by the way, we do have insurance. Go talk to them. And the insurer says, well, we're not going to pay because Caterpillar breached their insurance policy provisions. You can still collect it from Caterpillar, you know, because Caterpillar is still there and they have the money to pay it, you know, or a number of businesses. And then Caterpillar worries about trying to get it from the insurer. Right. And then the dispute is between, you know, the employer and their insurance company as to how to work out the potential breach of the insurance contract, you know. And so either that or they work out something and they say, fine, you know, we'll go ahead and pay this and we understand that we're going to be on the hook for something or our premiums are going up or, you know, there's some other way to resolve that. But in this case, that didn't occur. I mean, Metal went out and basically, I mean, they reorganized and they haven't paid it. I mean, and they refused to pay it. And they filed bankruptcy on it and whether there's any assets, we've been attempting to try to determine whether they have any assets and we haven't found anything. So we've been unable to collect it from the employer. So I think that that's probably the difference in those scenarios. I think the other scenario, which is a large part of our complaint, is the fact that if you've got an auto accident and you've got, you know, a case involving State Farm or some other company, you're also not dealing with the terms of the Workers' Compensation Act. You're not dealing with what we've included in here, which we believe is Section 4G, which, you know, when you read that, I mean, you know, obviously the other insurance policies are not having to deal with that language. But, I mean, 4G says, in the event the employer does not pay the compensation for which he or she is liable, then an insurance company which may have And so, you know, it's our position that this language says that, hey, you know, if you have a work comp case and your employer doesn't pay, then an insurance company which may have insured this. I mean, it doesn't even require that they did insure it, but just if they even may have insured this coverage. And in this case, there's no doubt that the insurance policy with AIG was effective on the day she was injured. There's no doubt that that policy is in place. We have a copy of the policy. We have confirmation, both in the federal courts in Utah and in this case, that the policy was effective on the date that Ms. Aper got hurt. And so, this is a case where the insurance company did, in fact, insure the employer. The employer did not pay. And so, the statute says that in that case, they shall become primarily liable. And so, they are automatically, by rule of this statute, just by the plain language of the statute, they're automatically liable to pay for this And so, I think it's our opinion that that would differentiate it from other types of accidents or other types of claims as well in the fact that you have this language in Section 4G. And, you know, it's our position. I mean, if this is not the purpose of 4G, then I guess I don't know what else it could be. But as far as the application of that, it seems to me that that's exactly what it's saying is, okay, Ms. Aper, you have a work comp claim against metals transportation. You went and you got the work commission made a determination as to what your award is, what you're entitled to. Metal transportation did not pay that award. And so, because they have not paid that award, according to Section 4G, AIG, who is their insurance company, even though they weren't notified and we weren't notified, they are now primarily liable. They are liable instead of metal transportation because metal transportation did not pay it. And so, it's our position that that's the requirement of Section 4G. And, you know, one of the things that we had put on our reply brief, which I thought was, you know, is that, you know, Section 4G doesn't really, it doesn't provide them in the language. It doesn't provide them defenses to that other than the fact that, you know, I mean, it just says that in the event the employer does not pay, that's the only condition prior to them becoming liable to pay it, is that the employer didn't pay it. I mean, the award has been set. The employer didn't pay it. So, the only condition, precedent to, you know, requiring them to pay this has been met. And so, it's our position that Section 4G then steps in and, in fact, requires them to now pay that award. And, you know, the other thing, you know, when Judge Bryant issued his decision in regards to granting AIG's motion to dismiss, he dismissed it on three different bases. The two of them are based on the prior appeal that was up here, rest issue, and collateral estoppel. And he indicated that, you know, it was his position that this issue has already been decided. Obviously, Judge Peters, who was, in Dewitt County, when this case started, Judge Peters was still on the bench. Judge Peters has since retired and, unfortunately, actually has since passed away. But Judge Bryant took over the case in the middle and this issue was presented to Judge Peters and Judge Peters denied the motion to dismiss and said, well, hey, you know, they filed a motion to add AIG to the case and that was denied. So, AIG was never made a party to the case because that request was denied. So, how could they have possibly litigated all these other issues when they were denied the opportunity to even include them in the case? And so, as far as rest due to collateral estoppel, that would not apply. Judge Bryant also addressed the issue of subject matter jurisdiction as to whether or not we were entitled to file this claim against AIG directly in the circuit court. And that issue, though, but the commission has already made their decision. I mean, the commission's decision and award has been entered. So, as far as what the commission needs to decide, it's already there. And so, this is just enforcement of that and that's something that, as Judge Bryant and the circuit court acknowledged, happens in the circuit court. I mean, the circuit court is the proper venue, the proper location, proper enforcement of the workers' compensation awards that are not paid. And so, that's what we're asking for. In regards to our first count, in regards to Section 4G, we also include the actual copy of the insurance policy and I've already referenced that a little bit in regards to what we believe is the fact that the policy does not give them the defenses, you know, in regards to not paying this claim. Especially in light of the fact of the statutory provisions which state that, you know, when required by law, they are directly and primarily liable to any person. I mean, their actual Subsection 3 of their contract is very similar to Section 4G. I mean, it's almost the same language. And so, it's our position that that portion of the contract actually also supports the fact that they are, in fact, by terms of their own insurance policy, responsible to pay Ms. Abra for this claim. Our third count is in regards to an agreement that was made in the bankruptcy court in New York, whereby Metal Transportation and AIG were disputing several items and as part of that, they entered a stipulation that stated that all of their claims, all disputes, all issues between them were settled by this bankruptcy stipulation in which AIG agreed to go ahead and handle and pay those claims for payment of certain premiums that they were still owed. And so, it's our position, obviously, this was an ongoing case at that time. And if you look at some of the litigation that followed between AIG and Metal Transportation, there was actually a case in New York that was filed after the bankruptcy was resolved where AIG sued Metal and Metal's defense in that suit was that AIG hadn't paid this claim. That was their specific dispute, was that hey, we settled all claims and you were supposed to go ahead and handle those and you didn't do it because Ms. Abra still hasn't been paid. And so, obviously, it was Metal Transportation's position based on their responses filed in New York that this claim was part of that settlement, part of that bankruptcy stipulation. Well, does it have to be listed? Well, I mean, bankruptcy, okay, you're going bankrupt. Well, are there claims against you? I assume that's part of what's asked. Right. What assets do you have? What liabilities do you have? What potential liabilities do you have? Was this one listed? It wasn't listed in the bankruptcy stipulation, no. No, in the bankruptcy proceeding at large? I mean, any of the papers in that proceeding? It was listed in the bankruptcy proceeding at large. As a claim or potential claim against Metal Transportation? Is that the phraseology? There was a lawsuit against this. You've got to disclose that to the bankruptcy court, right? Right. And also, there was a proof of claim filed in the bankruptcy court as well in regards to this case. And then they reached a settlement. They reached a settlement. And that settlement had to be approved by the bankruptcy court. By the bankruptcy court. And it was. It was. And then, you know, and obviously, I mean, AIG's position has been all along that obviously they still maintained all of their defenses, you know, in regards to that. But again, I mean, at that time, that was a settlement of all claims. And that was the purpose of that settlement. And if you look at the subsequent litigation between the two, you know, and that's part of the record as well, is the affidavits that were filed by Metal Transportation in that subsequent litigation, which specifically states that, hey, you know, you breached that bankruptcy stipulation because you didn't pay Mrs. Abra's claim. And so it's our position that that bankruptcy stipulation was an affidavit that AIG was required to pay Mrs. Abra for her claim. Our fourth account in the complaint is basically just an account for unjust enrichment. Because it's our position that AIG has received their premiums, they went to court in that subsequent litigation, and obtained an additional judgment against Metal for like a million and seven dollars. And so, I mean, they've actually, it kind of goes back to the whole issue of what would normally happen in a case like this. And, you know, I think normally in a case like this, you would have the employer and the insurer working out something in regards to how to resolve this. And essentially, that's kind of what happened at the bankruptcy court. There was this stipulation that was entered into, and then the stipulation was breached, and then there was a subsequent litigation. And AIG actually sued Metal for compensation related to this whole situation. I mean, and I know Mrs. Abra's claim was only a part of that, but based on, you know, Metal's filings, it was a large part of that. And so, therefore, you know, it's our position, I mean, that they've got their premiums, they've got their additional, they even went and filed and got additional compensation from Metal related to Metal's breach of these agreements, or potential breach of these agreements, because that was never decided. And so, therefore, we believe that, I mean, you know, they shouldn't be able to go and get their damages without actually complying with the terms of the policy and paying that. And then our last question. We haven't found the owner of the bottle. Okay. I'm sorry. Let's see the red light. Ladies and court, counsel, I'm Martin Haxel. I'm the attorney for the defendant, AIG. I would ask the court to affirm the decisions of the trial court in dismissing this complaint. Plaintiff wants us to pay for her workers' compensation awards. She wants her workers' compensation benefits, which is a statutory remedy in the state of Illinois. She wants to avail herself of the remedies in the statute. She has to comply with the statute. The statute says that is the sole remedy for her against her employer and her employer's insurance carriers under Section 5A. Why don't we just consider this like to be a garnishment action? The employer did not pay. She has a right to receive the money from the employer's insurance company. Because insurance carriers are entitled to prior notice, just like the employer here. How about the provision of your policy? As between an injured worker and us, we have notice of the injury when you have notice. That provision of the policy falls under this Part H, which says statutory provisions, and says these statements apply where they are required by law. How about the Illinois statute? The Illinois statute says in the event the employer does not pay, then the insurance company should become primarily liable. Why isn't that the... The Illinois statute also says, first and foremost, that the employer is primarily responsible for the payment of benefits. There's also provisions in the Illinois Act which say in instances of borrowing and loaning employers, depending upon the circumstances, one of those types of employers may be primarily responsible for the payment of benefits versus the other. But the Act still states that, first of all, before you can make any employer liable, the injured worker must give them notice. There is a provision in the Act under Section 6. The employee must give the employer notice. The purpose for that notice, as to the employer, is the same as giving an insurance carrier notice so that they can make an investigation. What is the responsibility to give the notice to the insurance company, the employer or the claimant? Under the facts of this particular situation, I would submit it's the employer's duty. I would also submit to the court that under some circumstances, and the case law shows this. I don't think any of that case law is cited. There are instances in which the injured person actually gives notice to the insurance carrier. I don't think it matters who provides the notice to the insurance carrier so long as that notice is timely, so long as that notice allows the carrier not only to investigate and protect its policyholder's interests, but also to protect its own interests. The purpose of the notice provisions in all of these policies of various kinds is the same purpose as that afforded by Section 6 of the Workers' Comp Statute. Give the employer or the employer's insurance carrier prior notice so they can investigate and protect their interests. I ask this question of Mr. Gregory, and I think your firm does a lot of work on this compensation. Yes, Your Honor. Is it unusual for an employer to pay some benefits without notifying their carrier? As Mr. Gregory said, you know, it might be, maybe we think it's going to be a small claim, we don't want our rates to go up, we'll pay some benefits for six months and see what happens because the employer is probably going to come back to work. That does happen. There are instances in which that happens. It normally results in something bad happening to the employer who behaves that way because their insurance coverage is jeopardized if they're acting on their own. Right. But it does happen from time to time. I myself have handled cases where members of my firm have handled cases where that very thing has happened. Well, part of that would mean that the insurance company doesn't get timely notice so that it can do the kind of investigation it wants to do. Correct. So then what happens? You said bad things happen. What are those bad things? A denial of coverage. A denial of coverage is the bad thing that happens. Absolutely. I don't think this was brought out in the briefs, but there is in the record because during one of our court hearings with Judge Bryan, he inquired if an employer in Illinois has insurance coverage, are they supposed to notify somebody that that coverage exists? And I believe I had to research that for Judge Bryan and I supplied the answer to him somewhere in the record, I can find it if necessary, that yes, an employer is supposed to notify the workers' commission and let them know I have this coverage. And is that the policy or do you think that's Illinois law? I think it's commission rules. Commission rules. Because your policy doesn't appear to require that on its face. No, it does not. But I think workers' commission rules require an employer to let everybody know I've got coverage here. Just in the same manner as if an employer becomes self-insured, they have to be approved by the commission so they can satisfy the commission that we have the financial wherewithal to pay these claims as they become due. And that is a measure of protection for petitioners like the plaintiff here. And if a carrier, if a self-insured employer goes bankrupt, then they look at the security they put on file to satisfy their claims. In this particular case, facts are absolutely undisputed that the carrier did not receive notice until after trial. This case has already gone up to the appellate court once before. So the question is, who gets stuck for the bad faith of the employer? Is it the employee or is it the insurance company? In this particular case, and unfortunately for Ms. Aber, it is the employee. We've already been to the appellate court once on this issue, and the appellate court correctly decided. You didn't give this insurance carrier notice. They didn't have a chance to prepare. They suffered substantial prejudice as a result of that. And even though this is a harsh result for the plaintiff, your beef lies with the employer and not with the insurance carrier. There's a case, Rice v. AAA AeroStar, which I think has been overruled, but there's a sentence in it that sort of struck me. Not every breach of a policy conditioned by the insured will allow the insurer to avoid payment under the policy. The law is also concerned with the rights of the public, especially where the insurance coverage is mandated by statute. And isn't that what we have here? This insurance coverage is mandated by statute. And in fact, your policy has the language that you get stuck if the insurer doesn't notify you. The policy language that my opponent referred to is found under the portion Statutory Provisions, and it says these statements apply where they are required by law. Now, the only section in the Only Workers' Compensation Act that my opponent can point to and say, insurance carrier, you're automatically stuck. So that should become primarily liable. But at the same time, if he already tried to make us a defendant in the workers' compensation case under Section 4G, and that attempt was denied, and let's face it, the only purpose for him doing that would be to have us pay the workers. Wait a minute. Let me ask you this hypothetical. If at the beginning of all this, he found out, or the injured employee had found out that you were there and had given you notice of the workers' compensation plan but did not make you a party. At what point in time, Your Honor? Immediately. Okay. Are you stuck for the damages then? If we had notice of this injury prior to any trial with sufficient time to do our investigation and protect our interests, we're not even here. They're not citing Section 4G. It's over. We are responsible for paying. They do not have to make you a party to the workers' comp plan. They may, but they do not have to. In the event that there is coverage, Section 4G says in the event that there may be insurance coverage, then you may add them as a defendant in the case and you may have an award entered jointly against employer and insurance carrier. But I would submit to the court the use of the word may also implies that there may not be coverage, and if this plaintiff is going to stand in the shoes of the policyholder, she's got to satisfy all of the policy prerequisites, which means prior notice. You make a point about is insurance required. Well, it's also required to have insurance to drive an automobile in this state. One of the cases I cited in my brief is American Standard versus Slipher. In that particular case, the driver going down some country road hit somebody and killed them, failed to report the accident, kept it a secret for five years before finally somehow confessing to the police. Yes, I did. And, of course, during that five-year period of time, he never notified his insurance carrier. So then after he confessed, and the administrator representing the estate of the deceased person files a lawsuit, the insurance carrier says, hey, we don't have coverage. We had no notice. This is prejudicial to us. And they won. Their notice provisions, which are very similar to ours, you've got to give them prior notice for the same reasons that an injured worker gives an employer prior notice so they can investigate and protect their interests. And such a denial of coverage under those harsh circumstances is not contrary to public policy. Those kinds of insurance contracts, though, have that notice provision, that language. If you don't tell us what's going on, there isn't going to be any coverage. To my knowledge, automobile, workers' comp, general liability, there's so many policies that all contain similar notice provisions so the carrier can go figure out what's going on. But I thought yours didn't require notice on the face of it. It doesn't say, tell us when you get a claim. I would note that my insurance policy is very specific, and it says tell us at once if an injury occurs that may be covered by this policy. Give us or our agent the names and addresses of all the injured persons and the witnesses. Promptly give us all notices, demands, legal papers. Cooperate with us and assist us. Is that in your brief? Oh, yes, Your Honor, and it's in our policy. It's on page... The separate appendix I submitted with my brief. This is on page A44. Under the heading part four, your duties if an injury occurs. They're very... The notice provisions and the duties of the policyholder in the event of an occurrence as set forth in this policy are very, very similar to the notice provisions in the policy in the slide. When it says part four, your duties if injuries occur, what does your mean? It means... Your refers to the policy, refers to Metal Transportation, the employer. Right. Refers to the employer. Right. Okay. This does not say anything about the injured employee giving you notice. It does not. But there are instances in which an injured employee could provide notice just to make sure that there's coverage present. I mean, sometimes ex parte trials are necessary and the plaintiff decided to go forward with one here. But at the same time, the fact that you're not getting anything out of the employer should, in my opinion, create a lot of anxiety on his part before proceeding with an ex parte trial, because something's going on which isn't normal, which isn't common. And unfortunately for the plaintiff here, that's what happened. There was something screwy going on, and it was the employer who was doing it, not the insurance carrier. How do we know that AIG did not have notice here? First of all, there is absolutely no evidence whatsoever that they had notice until after the trial. Has AIG submitted any kind of affidavit or whatever to say we did not have notice? When AIG filed a declaratory judgment action in federal court in Utah, and that complaint is an exhibit to the Third Amendment complaint filed by the plaintiff, it is alleged that they received notice for the first time in April of 2002, whereas the plaintiff first had her first work content trial in March of 2002. And when this case first went to the appellate court, one of the findings contained in that opinion, which I believe is binding on us here today, was the fact that it wasn't until after the trial and after that award had been reduced to a judgment that AIG received notice. So there's no question that they did not receive notice until after trial. And no one can really argue with the fact that that causes AIG substantial prejudice, which is a prior finding of the appellate court in this case. Substantial prejudice. If you want to make a party liable, give them prior notice, give them an opportunity to be heard. Section 4G does not require a contrary result because in order to make the employer liable, you've got to give them prior notice and an opportunity to be heard. If you want to make the insurance carrier liable, make sure they've got prior notice and an opportunity to be heard. That's consistent with the provisions of the Workers' Comp Act, the procedures of the Workers' Compensation Act. That's consistent with due process of law. It's consistent with the policy. So jumping ahead to the bankruptcy, then I'm thinking that it would be your position that whatever claims AIG paid or were part of the settlement with Metal Transportation were ones where you agreed you had coverage because you had notice or for whatever reason there was coverage. Whereas in a case like this, had it been considered at the settlement discussions, AIG's position would have been, we're not going to pay that claim because you didn't tell us when you were supposed to. We don't know what happened there. When you say settlement discussions, you're referring to between Metal Transportation and AIG. Yes, whatever occurred in the bankruptcy court in New York. I know that there were one or two other claims, Workers' Comp claims brought against Metal Transportation in roughly the same period of time. I believe those were paid. I can only surmise AIG had notice of those. With regard to the bankruptcy, my position is that bankruptcy agreement has no effect whatsoever upon this particular case because AIG was a creditor in the bankruptcy case just as the plaintiff here was. AIG filed a proof of claim because they were owed a bunch of money for their premium. Past due premiums. Past due premiums. And so they worked out a deal with regard to the premium that was owed and the bankruptcy agreement that is in the exhibit of the Third Amendment Complaint, I think is quite clear. It just deals with claims arising out of the bankruptcy. They don't really address the payment of any other workers' compensation claims. And Mr. Gregory said when this was further litigated in the State Court of New York, AIG obtained summary judgment against Metal Transportation for its failure to pay premiums pursuant to the bankruptcy agreement. And the only case Metal Transportation pointed to and said they didn't honor their agreement was our refusal to pay in this case. And I believe there is an order from the Court of New York in the record that said this is sanctionable. This is such a frivolous argument, it's sanctionable. By the time that bankruptcy stipulation had been entered into, the commission had already denied the plaintiff's attempt to name us as a defendant under Section 4G. We were headed towards the appellate court. The bankruptcy stipulation by its express provision says this will neither enlarge or reduce or affect in any way any defense you have as to any outstanding claim. This has to do with the bankruptcy case and our proof of claim trying to get our premium dollars. Are there any further questions? I would submit to the court that the rule in plaintiff's favor, prior decision of this court is wrong, McAnally case is wrong, Brodick case is wrong. Why don't we just call this case a garnishment action, not a workers' comp case? I believe that if it were still a garnishment action, the same defenses and the same issues would still exist. Okay. Thank you, counsel. Rebuttal, Mr. Rear? Yes, Your Honor. Mr. Haxel, it's stated at the end that if, in fact, you reverse the trial court's decision, that the prior appellate decision in this case would be wrong and the McAnally decision would be wrong. Actually, I believe that that would not be an accurate statement. The prior case said that you can't add them to the same case. And McAnally said, right, you have to file a separate action against that insurance company. And I believe that the reason for that is because that addresses the prejudice that Mr. Haxel has been talking about, because if you file that separate action, then they have the opportunity to come into court and to present their defenses and to say, hey, the policy has this language, or this was done wrong, or this is the reason why we don't have to pay. And it gives them that opportunity, which clearly they've had. And as we stated in our brief, this is their opportunity. But the other thing is that in that policy, yes, it has duties of metal transportation in that policy, but nowhere in that policy does it say that notice is a prerequisite to coverage. It never says, hey, if you don't give us timely notice, we may not have to pay this claim, or the employee may get stuck with this. There's nothing in that policy that explains what those remedies would be for failure to give those notice provisions. And so as far as that's concerned, I mean, we don't believe that the policy gives them that defense because the policy doesn't contain language that says this is a prerequisite to us covering the claim. And in fact, it has language to the opposite, where it says we can become primarily liable on this claim, just like Section 4G does say. And I would just like to also just clarify in regards to the notification of insurance coverage to the State of Illinois, we did check with the Commission as part of the record, but we did check with the Commission, and neither MEDL nor AIG had notified the Illinois Work Comp Commission about AIG's coverage in this case. So when we did contact the Commission at some point prior to our hearing, just because of the fact that it may have been at the point where, because the ex parte trial was actually noticed once, and then Arbitrator Neal said, you know, look, let's not do this. Let's see if we can try again and get somebody to show up or get some type of response, double-check, make sure there's no insurance coverage, whatever. And then we came back. So we were noticed in February, came back in March, and in the meantime, we noticed them yet again double-checked on the insurance coverage, and there was nothing found. So as far as, you know, that type of thing, there was no notification to the Commission either of the fact that AIG had this coverage. And I guess just the final thing in regards to what he was saying is, I do believe that the Act does require that the employee give notice to the employer of the claim, which she clearly did, and that's documented as part of the record as well, is that Metal Transportation clearly had prior notice of the hearings that were held. And, in fact, the actual second hearing that was held, the second 19B hearing that was held in 2007, AIG did have prior notice of that, and they voluntarily chose not to participate in that hearing, which obviously for the purpose of the fact that, you know, of the prior award, and this whole issue, they decided not to participate in that. So that's all I have. Thank you, Counsel. We'll take the matter under advice.